**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| STATE OF OKLAHOMA, ex rel. GENTNER DRUMMOND, in his official capacity as ATTORNEY GENERAL OF OKLAHOMA, | ) ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 26-cv-00450-SH |
| v. | ) ) | |
| CENTURY ALUMINUM COMPANY, a Delaware corporation; and ALUMINUM OKLAHOMA, LLC d/b/a OKLAHOMA PRIMARY ALUMINUM, LLC, | ) ) ) ) ) | |
| Defendants. | ) | |

**PLAINTIFF'S MOTION TO REMAND AND FOR AN AWARD OF COSTS AND
ATTORNEY FEES UNDER 28 U.S.C. § 1447(c), WITH BRIEF IN SUPPORT**

The State of Oklahoma respectfully moves the Court, pursuant to 28 U.S.C. § 1447(c), to remand this action to the District Court of Rogers County, Oklahoma, and—because Defendants lacked any objectively reasonable basis for removal—to award the State its just costs and actual expenses, including attorney fees, incurred as a result of the removal. The State will establish the amount of that award by separate application following remand. In support, the State submits the following brief.

**INTRODUCTION**

The State filed this action in the District Court of Rogers County to do what a sovereign State has always done: protect its people, its land, and its natural resources from a threatened public nuisance, in its own courts, under its own law. The Petition pleads two claims. Both arise under Oklahoma law—anticipatory public nuisance under OKLA. STAT. tit. 50, §§ 1–2,

1

8, and threatened pollution under the Oklahoma Environmental Quality Code, OKLA. STAT. tit. 27A, § 2-6-105. The Petition invokes no federal statute, no federal regulation, and no federal right. Pet. ¶ 3. It goes further: it *expressly disclaims* any "claim arising under the Constitution, laws, or treaties of the United States." Pet. ¶ 10. Under the well-pleaded complaint rule, that should have been the end of the matter.

Defendants nevertheless removed. Their sole theory is that the State's claims "necessarily raise" substantial and disputed questions of federal law under *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005), because the proposed smelter will answer to federal air-permitting requirements and federally approved emissions standards. Notice of Removal ¶¶ 9–10. The Tenth Circuit rejected that exact theory of removal in *Board of County Commissioners of Boulder County v. Suncor Energy (U.S.A.) Inc.*, 25 F.4th 1238 (10th Cir. 2022).[1] In *Suncor*, the court affirmed remand of state-law public nuisance claims brought against heavily regulated energy companies and reaffirmed that a federal defense, including preemption, cannot support removal "even if both parties admit that the federal defense is the only question truly at issue in the case." *Id.* at 1255 (quoting *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 14 (1983)). Yet the Notice of Removal never cites *Suncor*, let alone attempts to distinguish it. Instead, Defendants cite *Grable* and *Gunn* in

---

[1] The Supreme Court's recent grant of certiorari in the Boulder County litigation does not disturb *Suncor*'s holding. *See Suncor Energy (U.S.A.) Inc. v. County Commissioners of Boulder County*, No. 25-170 (U.S. cert. granted Feb. 23, 2026). That case arises on direct review of the Colorado Supreme Court's merits decision and presents the question whether federal law precludes state-law claims premised on interstate greenhouse-gas emissions—an ordinary-preemption defense litigated in state court. The Supreme Court denied certiorari on the Tenth Circuit's removal decision, 143 S. Ct. 1795 (2023), which remains the controlling law of this Circuit.

the abstract, as if the controlling decision of the Tenth Circuit applying those very cases to state-law nuisance claims did not exist.

Furthermore, the Notice of Removal describes not a federal question but a federal defense—Defendants' anticipated argument that compliance with the Clean Air Act shields them from Oklahoma nuisance law. Even if applicable, that argument may be raised, briefed, and decided in the District Court of Rogers County, which is "presumptively competent" to adjudicate it. *Suncor*, 25 F.4th at 1267. What Defendants may not do is use a potential defense as a ticket out of the forum whose laws they are accused of offending. Defendants would prefer not to answer to an Oklahoma court for a nuisance they propose to build in the middle of an Oklahoma farming community. That preference does not confer jurisdiction.

Because binding precedent forecloses every ground asserted in the Notice of Removal—and because the Notice does not acknowledge, much less distinguish, that precedent—the removal is objectively unreasonable. It has nonetheless accomplished the only thing it could: delay, in a case brought to enjoin a project whose proponents say construction begins this year. Pet. ¶ 31. The Court should remand, and it should not ask Oklahoma's taxpayers to bear the cost of a detour that Defendants' counsel had every reason to know led nowhere. The State asks the Court to find the removal objectively unreasonable and award fees and costs as sanctions under § 1447(c).

## BACKGROUND

On June 2, 2026, the State of Oklahoma, by and through Attorney General Gentner Drummond, filed its Petition for Injunctive Relief and Abatement of Anticipatory Public Nuisance in the District Court of Rogers County, Case No. CV-2026-108. The Petition alleges

that Defendants intend to construct and operate, at the Tulsa Port of Inola, the largest primary aluminum smelter in American history—a facility whose pending air-quality permit application contemplates emissions on the order of 425 tons of hydrogen fluoride per year, within approximately three miles of Inola's homes, schools, and cattle operations. Pet. ¶¶ 2, 17, 19. The Petition details the documented consequences that smelter fluoride inflicts upon grazing herds; Defendants' own multi-state record of emissions violations, fines, and settlements at their existing facilities; and the imminent, irreparable character of the threatened harm. Pet. ¶¶ 20–33.

The Petition pleads two counts, both under Oklahoma law: Count I, anticipatory public nuisance under OKLA. STAT. tit. 50, §§ 1–2, 8; and Count II, in the alternative, threatened pollution under OKLA. STAT. tit. 27A, § 2-6-105. On the question of federal jurisdiction, the Petition could not be clearer:

> The State further pleads no claim arising under the Constitution, laws, or treaties of the United States, and **expressly disclaims any such claim**, so that no federal question appears on the face of this well-pleaded Petition.

Pet. ¶ 10 (emphasis added); *see also* Pet. ¶ 3 ("The State does not bring this action to litigate any question of federal law, and it pleads none.").

Defendants were served on July 1, 2026, and removed on July 21, 2026, invoking only federal-question jurisdiction under 28 U.S.C. § 1331 and the *Grable/Gunn* substantial-federal-question doctrine. Notice of Removal ¶¶ 8–11. Defendants do not—and could not—invoke diversity jurisdiction: the State is not a "citizen" of any state for purposes of 28 U.S.C. § 1332. *Moor v. County of Alameda*, 411 U.S. 693, 717 (1973). Nor do Defendants invoke complete preemption, the only other recognized exception to the well-pleaded complaint rule. *Suncor*,

4

25 F.4th at 1255. Federal-question jurisdiction under *Grable* is the sole asserted basis for removal, and it fails.

## LEGAL STANDARD

"Federal courts are courts of limited jurisdiction," and the party invoking removal jurisdiction bears the burden of establishing it. *Dutcher v. Matheson*, 733 F.3d 980, 985 (10th Cir. 2013). "[S]tatutes conferring jurisdiction on federal courts are to be strictly construed, and doubts resolved against federal jurisdiction." *Suncor*, 25 F.4th at 1250 (quotation omitted); *accord Fajen v. Foundation Reserve Insurance Co., Inc.*, 683 F.2d 331, 333 (10th Cir. 1982). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). An order remanding the case "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." *Id.*

## ARGUMENTS AND AUTHORITIES

**I.    No Federal Question Appears on the Face of the Well-Pleaded Petition, and the State Is the Master of Its Complaint.**

Federal-question removal is governed by the well-pleaded complaint rule: a case arises under federal law only when "a federal question is presented on the face of the plaintiff's properly pleaded complaint," and the federal question "may not enter in anticipation of a defense." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987); *Suncor*, 25 F.4th at 1255 (quoting *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 494 (1983)). The corollary is equally settled: the plaintiff is "the master of the claim" and may "avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar*, 482 U.S. at 392. That is exactly what the State did here. The Petition pleads Oklahoma nuisance law and the Oklahoma Environmental Quality

Code, invokes the equitable and police powers of the State, and disclaims—expressly, and twice—any federal claim. Pet. ¶¶ 3, 10. No element of anticipatory public nuisance under OKLA. STAT. tit. 50, §§ 1–2, and no element of a claim under OKLA. STAT. tit. 27A, § 2-6-105, is supplied by federal law.

*Suncor* also forecloses any argument that the State has disguised federal claims as state-law claims. The energy companies in *Suncor* removed state-law public nuisance and related claims brought by Colorado municipalities, arguing that claims directed at heavily regulated conduct are "inherently federal." *See* 25 F.4th at 1261. The Tenth Circuit disagreed. It held that the "artful pleading" exception is coextensive with complete preemption, a doctrine the energy companies could not satisfy and Defendants do not invoke here. *Id.* at 1256, 1261–62. The court then declined to look past the complaint for a hidden federal claim: "The Municipalities have pleaded only state-law causes of action. And at this stage of the proceedings, **we do not look behind those allegations**." *Id.* at 1262 (emphasis added). The federal interests asserted in *Suncor*, which concerned climate-change damages and fossil-fuel production on the federal Outer Continental Shelf, were far broader than anything Defendants identify here. *See id.* at 1247–48. If those far-reaching interests could not support removal of state-law nuisance claims, one pending air permit in Rogers County cannot. Removal therefore fails under the well-pleaded complaint rule.

II.    **Defendants' *Grable* Theory Fails Every Prong of the Test, and It Fails Under Binding Circuit Precedent Defendants Declined to Mention.**

*Grable* jurisdiction is reserved for a "special and small category" of cases, *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006), covering a "slim category" of state-law disputes. *Suncor*, 25 F.4th at 1266 (quoting *Gunn v. Minton*, 568 U.S. 251, 258 (2013));

6

*Gilmore v. Weatherford*, 694 F.3d 1160, 1171 (10th Cir. 2012). A state-law claim supports federal jurisdiction only if a federal issue is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258; *Suncor*, 25 F.4th at 1265. Defendants must satisfy all four. They satisfy none.

### A.  No Federal Issue Is Necessarily Raised.

"To determine whether an issue is 'necessarily' raised, the Supreme Court has focused on whether the issue is an 'essential element' of a plaintiff's claim." *Suncor*, 25 F.4th at 1266 (quoting *Gilmore*, 694 F.3d at 1173). The elements of Oklahoma public nuisance are supplied by OKLA. STAT. tit. 50, §§ 1–2 and Oklahoma common law: an act or omission that annoys, injures, or endangers the comfort, repose, health, or safety of a considerable number of persons. The State can prove every element—and obtain every remedy it seeks—without establishing the meaning or application of any federal statute. Defendants' own recitation of the issues they intend to litigate, Notice of Removal ¶ 10, gives the game away: each is a *defense*—that federal permits will authorize their emissions, that the Clean Air Act's "comprehensive federal regulatory framework" displaces Oklahoma nuisance law, that "state-law liability may [not] be imposed" on federally regulated conduct. But a federal defense, "including preemption, cannot support removal 'even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the federal defense is the only question truly at issue in the case.'" *Suncor*, 25 F.4th at 1255 (quoting *Franchise Tax Bd.*, 463 U.S. at 14); *accord Caterpillar*, 482 U.S. at 393; *Becker v. Ute Indian Tribe*, 770 F.3d 944, 947–48 (10th Cir. 2014); *Felix v. Lucent Technologies, Inc.*, 387 F.3d 1146, 1158 (10th Cir. 2004). And this case does

7

not even test that rule's outer edge: the Petition anticipates no federal defense, much less concedes that one is the only question in the case.

The project's pending air-quality permit application makes no difference to the need for remand. *See* Pet. ¶¶ 6, 19, 31. Indeed, the application is pending before the Oklahoma Department of Environmental Quality—a state agency—and the Petition's claims neither challenge that permit nor depend on it. Whether the Inola smelter will be a nuisance under Oklahoma law does not turn on a permit; Oklahoma law, not any permitting program, supplies every element of the State's claims. A complaint's reference to the regulatory backdrop against which a defendant operates does not convert state-law elements into federal ones. *Suncor*, 25 F.4th at 1266–67.

### B. No Federal Issue Is Actually Disputed.

*Grable* itself involved a quiet-title action in which the meaning of a federal tax-notice statute was "the only legal or factual issue contested in the case." 545 U.S. at 315. Here, the contested issues are quintessentially state-law and fact-bound: whether a smelter of unprecedented scale, sited three miles from a town's schools and pastures and operated by foreign-owned companies with documented multi-state records of emissions violations, will constitute a nuisance under Oklahoma law. Whatever role federal permits may eventually play as evidence or defense, no disputed question of federal *law* stands as an element between the State and relief.

### C. Defendants Identify No Substantial Federal Issue.

"[I]t is not enough that the federal issue be significant to the particular parties in the immediate suit"; the "substantiality inquiry under *Grable* looks instead to the importance of

the issue to the federal system as a whole." *Gunn*, 568 U.S. at 260. "A prerequisite" to establishing that importance "is to identify a concrete federal law or regulation that the case definitively implicates," *Suncor*, 25 F.4th at 1268—something the Notice of Removal never does. It offers only generalities: "federal air-permitting requirements," "federally approved emissions standards," "federal environmental regulatory programs." Notice of Removal ¶ 9. Which provision? Which regulation? Which disputed question of federal law, whose resolution would matter to anyone beyond these parties? The Notice does not say, because there is none. Fact-bound, party-specific applications of federal standards are the paradigm of what *Grable* excludes. *Empire Healthchoice*, 547 U.S. at 700–01.

### D. Federal Jurisdiction Would Disrupt the Balance Congress Approved.

Congress declared in the Clean Air Act itself that "air pollution prevention . . . and air pollution control at its source is **the primary responsibility of States and local governments**." 42 U.S.C. § 7401(a)(3) (emphasis added). The Act preserves the right of every State "to adopt or enforce" its own requirements respecting control or abatement of air pollution, 42 U.S.C. § 7416, and its savings clause preserves rights "under any statute or common law," 42 U.S.C. § 7604(e). As the Tenth Circuit put it, "the CAA is designed to provide a floor upon which state law can build, not a ceiling to stunt complementary state-law actions." *Suncor*, 25 F.4th at 1263. Nuisance and abatement actions to protect public health, natural resources, agriculture, and property are among the oldest exercises of a State's police power. "Allowing any mismatch in the priorities evinced through state and federal law to warrant removal, in the absence of a substantial federal issue necessarily raised in the complaint, would lead to a major diminution in the power of state courts to enforce their own

9

laws." *Id.* at 1267. Defendants' real grievance, at bottom, is that Oklahoma law may hold their project accountable more strictly than a federal permit would. "But this is simply a description of our federalist system, not a reason to override state sovereignty." *Id.*

### III. The Clean Air Act Does Not Completely Preempt the State's Claims, and Ordinary Preemption Belongs in State Court.

Defendants do not invoke complete preemption, and for good reason: the Tenth Circuit held in *Suncor* that the Clean Air Act's provisions do not "vindicate the same basic right or interest" as state-law nuisance claims and therefore cannot completely preempt them. 25 F.4th at 1263–65. The Supreme Court's decision in *American Electric Power Company v. Connecticut*, 564 U.S. 410 (2011), confirms the point. After holding that the Clean Air Act displaces *federal* common-law nuisance, the Court explained that "the availability *vel non* of a state lawsuit depends, *inter alia*, on the preemptive effect of the federal Act," and it left that question open for consideration on remand. *Id.* at 429. In other words, the only obstacle federal law could pose to the State's claims is ordinary preemption, and ordinary preemption is a merits defense. To the extent Defendants believe ordinary preemption defeats the State's claims on the merits, that is an argument for the District Court of Rogers County. Absent complete preemption, preemption is a defense to be raised and resolved in state court. *Felix*, 387 F.3d at 1158. State courts "have inherent authority, and are thus presumptively competent" to adjudicate federal issues, "including federal defenses." *Suncor*, 25 F.4th at 1267 (quoting *Tafflin v. Levitt*, 493 U.S. 455, 458 (1990)). Consequently, everything Defendants say they wish to litigate can be litigated—in the court the State chose. Oklahoma's courts do not need this Court's supervision to read the Clean Air Act.

#### IV.    The Removal Was Objectively Unreasonable, and the State Is Entitled to Its Fees and Costs Under § 1447(c).

"Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). Congress provided for fee-shifting precisely to deter "removals sought for the purpose of prolonging litigation and imposing costs on the opposing party." *Id.* at 140. This removal fits the description in every particular.

Every proposition necessary to remand was settled law long before Defendants filed their Notice. *Franchise Tax Board* held in 1983 that a federal defense, including preemption, cannot support removal. *Caterpillar* announced the master-of-the-complaint doctrine in 1987, and the Tenth Circuit applied these rules in *Felix* in 2004. The Supreme Court confirmed the narrowness of *Grable* in *Empire Healthchoice* in 2006 and again in *Gunn* in 2013. And in 2022, the Tenth Circuit applied each of these authorities in *Suncor* to reject removal of state-law public nuisance claims against federally regulated energy defendants. Defendants are represented by experienced counsel, and any reasonable pre-filing inquiry would have led directly to *Suncor*. Yet the Notice of Removal does not cite *Suncor*, much less distinguish it. Instead, it invokes *Grable* and *Gunn* in the abstract and ignores the one decision in which the Tenth Circuit applied those cases to this category of claims and ordered remand. A removal that cannot be reconciled with controlling circuit precedent, and that fails even to acknowledge that precedent, is objectively unreasonable under any standard. This was not a close call.

Meanwhile, the removal has done its work. The State's Petition seeks to enjoin an anticipated nuisance, and Defendants have "publicly represented that construction is expected to begin this year." Pet. ¶ 31. The State should not bear the cost of that strategy, and future

litigants should know this District will not subsidize it. The State respectfully requests that the Court, in its remand order, determine that Defendants lacked an objectively reasonable basis for removal and award the State its just costs and actual expenses, including attorney fees, incurred as a result of the removal, with the amount to be established by separate application and supporting evidence submitted following the Court's order.

### CONCLUSION

For these reasons, the State respectfully requests that the Court remand this action to the District Court of Rogers County, Oklahoma; determine that Defendants lacked an objectively reasonable basis for removal and award the State its costs and actual expenses, including attorney fees, as sanctions under 28 U.S.C. § 1447(c), in an amount to be established by separate application; and grant such other relief as is just.

Respectfully submitted,

/s/ Garry M. Gaskins, II
GENTNER DRUMMOND, OBA #16645
   *Attorney General*
GARRY M. GASKINS, II, OBA #20212
   *Solicitor General*
JENNIFER L. LEWIS, OBA #32819
   *Deputy Attorney General*

OFFICE OF ATTORNEY GENERAL
STATE OF OKLAHOMA
313 N.E. 21st Street
Oklahoma City, OK 73105
Phone: (405) 521-3921
Garry.Gaskins@oag.ok.gov

*Counsel for the State of Oklahoma*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 23, 2026, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing, which will transmit a Notice of Electronic Filing to the following ECF registrants: J. Christopher Davis, Kayci Bair Hughes, Bradley W. Welsh, Donald K. Shandy, and Timila Rother, Crowe & Dunlevy, attorneys for Defendants.

/s/ Garry M. Gaskins, II
Garry M. Gaskins, II