# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) STATE OF OKLAHOMA, ex rel. GENTNER DRUMMOND, in his official capacity as ATTORNEY GENERAL OF OKLAHOMA,<br><br>      Plaintiff,<br><br>v.<br><br>(1) CENTURY ALUMINUM COMPANY, a Delaware corporation; and;<br>(2) ALUMINUM OKLAHOMA, LLC d/b/a OKLAHOMA PRIMARY ALUMINUM, LLC,<br><br>      Defendants. | Case No. 26-cv-00450-SH |

## DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM OR, ALTERNATIVELY, TO DISMISS OR STAY PURSUANT TO THE DOCTRINE OF PRIMARY JURISDICTION, WITH BRIEF IN SUPPORT

Respectfully submitted,

/s/ *Kayci Bair Hughes*
J. Christopher Davis, OBA #16639
Kayci Bair Hughes, OBA #18399
Bradley W. Welsh, OBA #18488
**CROWE DUNLEVY**
222 N. Detroit Ave., Suite 600
Tulsa, Oklahoma 74120
Telephone: (918) 592-9800
chris.davis@crowedunlevy.com
kayci.hughes@crowedunlevy.com
brad.welsh@crowedunlevy.com

Donald K. Shandy, OBA#11511
Timila Rother, OBA #14310
**CROWE DUNLEVY**
Braniff Building, 324 N. Robinson Ave., Suite 100
Oklahoma City, Oklahoma 73102
Telephone: (405) 235-7700
don.shandy@crowedunlevy.com
timila.rother@crowedunlevy.com
**ATTORNEYS FOR DEFENDANTS**

# TABLE OF CONTENTS

I.     RELEVANT FACTUAL BACKGROUND. ................................................................1

II.    APPLICABLE LEGAL STANDARDS .........................................................4

     A.   Rule 12(b)(6): Failure to State a Claim. ...............................................4

III.   ARGUMENT .......................................................................................5

     A.   The AG Fails to Allege Facts Sufficient to State an Anticipatory Nuisance Claim. ....................................................................................5

         1.   The Anticipatory Public Nuisance claim is not based upon an unlawful act. ......................................................................................6

         2.   The AG fails to sufficiently allege reasonable probability of any injury. ..........7

         3.   The AG cannot plead irreparable harm as a matter of law. ...............................10

     B.   The AG Fails to Sufficiently State a Threatened Pollution Claim. .........................11

     C.   The AG Lacks Authority to Use Anticipatory Litigation to Displace DEQ's Federally-Delegated Regulatory Authority. .................................................11

         1.   The AG's Petition Infringes Separation of Powers and Impermissibly Conflicts with DEQ's Statutory Authority. ......................................................12

         2.   The AG lacks statutory authority to sue, and this defect is jurisdictional warranting dismissal. ........................................................................14

         3.   The Court should dismiss the Petition to avoid an expansive reading of Section 18b(A)(3) that raises serious constitutional concerns. .........................15

     D.   Alternatively, the Court Should Dismiss or Stay This Action Pursuant to the Doctrine of Primary Jurisdiction Pending Completion of the Federal Regulatory Process. ................................................................................16

         1.   DEQ administers the federal Clean Air Act permitting program under delegated authority from EPA. ...........................................................16

         2.   The doctrine of primary jurisdiction warrants deference to the pending federal regulatory process administered by DEQ. ............................................17

IV.   RELIEF REQUESTED. ........................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abraham v. Trail Lanes, Inc.*,
2014 OK CIV APP 107, 352 P.3d 1256 (Div. 1 2014)............................................................6

*Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*,
458 U.S. 592, 607 (1982)..........................................................................................12

*Ashcroft v. Iqbal*,
556 U.S. 662, 678 (2009)........................................................................................5, 9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 570 (2007)........................................................................................4, 8

*Burlington N. & Santa Fe Ry. Co. v. Grant*,
505 F.3d 1013, 1023 (10th Cir. 2007) ......................................................................5

*State ex rel. Cartwright v. Georgia Pacific Corp.*,
1982 OK 148, ¶ 6, 663 P.2d 718, 720.....................................................................14

*Cherokee Nation v. McKesson Corp.*,
529 F. Supp. 3d 1225, 1241 (E.D. Okla. 2021) ........................................................6

*Cherokee Nation v. United States Dep't of the Interior*,
2025 OK 4, 564 P.3d 58........................................................................12, 13, 15, 16

*Davies v. Nat'l Co-op. Refinery Ass'n*,
963 F. Supp. 990, 997 (D. Kan. 1997)....................................................................19

*State ex rel. Haskell v. Huston*,
1908 OK 157, 97 P. 982..........................................................................................14

*Ins. Co. of North America v. Sheinbein*,
488 P.2d 1273 (Okl.1973)..........................................................................................6

*Int'l Paper Co. v. Ouellette*,
479 U.S. 481, 494 (1987).....................................................................................3, 6, 7

*Landis v. North Am. Co.*,
299 U.S. 248, 254 (1936)........................................................................................18

*Marshall v. El Paso Nat. Gas Co.*,
874 F.2d 1373, 1376-77 (10th Cir. 1989) ..................................................17, 18, 19

*McClain Grp., LLC v. Hicks*,
No. 23-cv-507-JDR-JFJ, 2025 WL 2797933, at *6 (N.D. Okla. Sept. 29, 2025)....................10

*McCormick v. Halliburton Co.*,
No. CIV-11-1272-M, 2012 WL 1119493, at *2 (W.D. Okla. Apr. 3, 2012).....................18, 19

*Nuncio v. Rock Knoll Townhome Village, Inc.*,
389 P.3d 370, 374 (Okla. Civ. App. 2016) ....................................................................6

*Paradise Distribs., Inc. v. Evansville Brewing Co.*,
906 F. Supp. 619, 622 (N.D. Okla. 1995) ...................................................................10

*Sierra Club v. Chesapeake Operating, LLC*,
248 F. Supp. 3d 1194, 1206 (W.D. Okla. 2017) ...........................................................18

*Stratford Holding, LLC v. Foot Locker Retail Inc.*,
No. CIV-12-0772-HE, 2013 WL 5550461, at *6 (W.D. Okla. Oct. 8, 2013) .........................19

*Thomas v. Farley*,
31 F.3d 557, 558-59 (7th Cir. 1994) ............................................................................7

*Walker v. Kingfisher Wind, LLC*,
No. CIV-14-914-D, 2016 WL 5947307, at *7 (W.D. Okla. Oct. 13, 2016).......................5, 10

**Statutes**

17 O.S. § 52(A)(8) & ..............................................................................................13, 16

21 O.S. 1961 Section 1395 ...........................................................................................6

27A O.S. § 2-3-101(B)(2).............................................................................................16

27A O.S. § 2-3-101(E).................................................................................................16

27A O.S. § 2-3-502 .....................................................................................................10

27A O.S. § 2-5-105 .................................................................................................13, 17

27A O.S. § 2-6-103 .................................................................................................13, 17

27A O.S. § 2-6-105 ......................................................................................................1

27A O.S. § 2-6-105(A) ................................................................................................11

50 O.S. § 1 .............................................................................................................5, 6, 7

52 O.S. § 139(A)(8) .................................................................................................13, 16

74 O.S. § 18b(A)(3) ........................................................................................12, 13, 15, 16

42 U.S.C. § 7410(a)(2)(C) ................................................................................................1

42 U.S.C. § 7661a(a).........................................................................................................2

42 U.S.C. § 7661c(a).........................................................................................................1

Clean Air Act ...........................................................................1, 2, 3, 7, 16, 19, 20

**Other Authorities**

Fed. R. Civ. P. 8(a)(2)......................................................................................................5

Federal Rules of Civil Procedure Rule 12(b)(6) ....................................................1, 4, 20

https://oklahoma.gov/deq/aluminum-smelter-inola.html...................................................2

https://oklahoma.gov/deq/permits/air-permits.html..........................................................8

https://oklahoma.gov/deq/permits/air-permits/aqd-construction-permit-proposed-
      aluminum-smelter.html ...........................................................................................9

https://www.epa.gov/caa-permitting/delegation-clean-air-act-authority ...........................1

https://www.epa.gov/nsr/prevention-significant-deterioration-basic-information ...........2

Executive Order 14,241, 90 Fed. Reg. 13,673 (2025) ......................................................3

Oklahoma Constitution Article V, § 57 .........................................................................15

Senate Bill 233 ...........................................................................................................15, 16

Defendants Century Aluminum Company and Aluminum Oklahoma, LLC (jointly, "Defendants") move to dismiss the claims asserted by the State of Oklahoma ex rel. Gentner Drummond – Attorney General ("AG") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief may be granted.

The AG's anticipatory nuisance claim must be dismissed because: (1) it fails to allege any unlawful act; (2) it fails to allege facts establishing a reasonable probability that pollution will occur; and (3) it cannot establish irreparable harm as a matter of law. The AG's claim under 27A O.S. § 2-6-105 for threatened pollution likewise fails because the Petition does not plead facts showing that Defendants have "caused pollution" or will place waste where pollution is "likely" to occur, and the AG cannot establish irreparable harm as a matter of law. In the alternative, the Court should dismiss or stay this action pending completion of the Oklahoma Department of Environmental Quality ("DEQ")'s administration of delegated federal programs, specifically under the Clean Air Act, which is the proper forum for resolving the technical environmental issues the AG raises.

## I.     RELEVANT FACTUAL BACKGROUND

Under the Clean Air Act, the federal government establishes national ambient air quality standards and comprehensive permitting requirements that apply to major stationary sources. States may implement these federal requirements through EPA-approved State Implementation Plans ("SIPs"), but the underlying regulatory framework—including the substantive standards, permit conditions, and enforcement mechanisms—derives from federal law.[1] See 42 U.S.C. § 7410(a)(2)(C); 42 U.S.C. § 7661c(a). Sources are prohibited from operating without such a permit.

---

[1] https://www.epa.gov/caa-permitting/delegation-clean-air-act-authority

See 42 U.S.C. § 7661a(a). The Oklahoma DEQ administers these federally-derived requirements under authority delegated by EPA.

DEQ is currently reviewing a construction permit application for a proposed aluminum smelter to be built and operated by Defendants in Inola, Oklahoma, pursuant to this federally-delegated Clean Air Act authority. Construction has not commenced. The AG acknowledges this pending review. (Pet. ¶¶ 19, 31). The requested permit is a Prevention of Significant Deterioration ("PSD") permit—a permit type required under the Clean Air Act, the purpose of which is to ensure that clean air remains clean.[2] To be granted, a PSD permit must address four questions established by federal regulations: (1) whether the facility will use the best available pollution controls; (2) whether it will protect national and state air quality standards; (3) whether it will harm pristine areas such as national parks; and (4) what broader impacts it will have on soil, plants, and visibility.[3]

Every PSD permit must satisfy four analytical requirements: (1) Best Available Control Technology ("BACT"), ensuring the facility will employ the most effective pollution controls that are technically feasible and economically reasonable[4]; (2) National Ambient Air Quality Standards ("NAAQS") modeling, demonstrating that emissions will not cause pollutant levels to exceed federal health standards or state increment ceilings; (3) Class I review, ensuring pristine areas

---

[2] https://www.epa.gov/nsr/prevention-significant-deterioration-basic-information

[3] *See* <https://oklahoma.gov/deq/aluminum-smelter-inola.html>.

[4] More specifically, the BACT process requires the identification of every possible control technology, from the most stringent to the least, including transfer of technology from other industries and countries. Available options are arranged by control effectiveness, and the top option is assessed by energy, environmental, and economic impacts. Only if it fails is a less stringent emissions technology selected. The result is a permit that establishes an enforceable numeric emissions limit and monitoring requirements.

protected by Congress will not be adversely impacted; and (4) additional impacts analysis, evaluating effects on vegetation, soils, visibility, and indirect air quality impacts.

Rather than allowing the regulatory process prescribed by federal law—and implemented by DEQ under federally-delegated authority—to proceed, the AG seeks to interpose its preferences through collateral attack premised principally on public nuisance law. Unlike the permitting process that applies federal Clean Air Act standards, public nuisance law provides no discernible criteria for consistent emissions management. When combined with the injunctive relief the AG seeks as its sole remedy, this lawsuit would substitute judicial preferences for the comprehensive federal regulatory framework. Although the Clean Air Act does not preempt every state-law nuisance claim, the Supreme Court has clarified in the analogous Clean Water Act context that state law is preempted "if it interferes with the methods by which the federal statute was designed to reach [its] goal." *Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 494 (1987). "[C]ommon-law suits [] have the potential to undermine [the] regulatory structure." *Id.* at 497. Without a consistent permitting system, "[i]t would be virtually impossible to predict the standard" for lawful emissions, and "[a]ny permit issued . . . would be rendered meaningless." *Id.*[5] This is precisely the issue here.

The United States government has identified this Project as advancing federal policy objectives. In Executive Order 14,241, 90 Fed. Reg. 13,673 (2025), President Trump declared that the Nation's economic and national security are threatened by dependence on foreign sources of critical minerals and directed federal agencies to take "immediate action" to facilitate increased domestic production of critical minerals, including aluminum. Federal officials have publicly

---

[5] The federal regulatory process administered by DEQ includes opportunities for review and comment, and any concerns held by the State may be addressed through that established process before any final permit determination.

3

identified the Project as advancing objectives relating to domestic manufacturing, critical minerals, supply-chain resilience, and national security. During a June 29, 2026 public meeting in Inola, DOE official Audrey Robertson emphasized that federal support for the Project is tied to domestic manufacturing capacity and compliance with rigorous environmental standards. Technical Director Adam Burstein described domestic aluminum production as strategically important to the Nation's defense industrial base.

The project is also an <u>Oklahoma</u> priority. As Governor Stitt has explained:

> Aluminum is not just a metal; it is the backbone of our military, and every time China tightens its grip on aluminum supply chains, they threaten our ability to defend our nation. President Trump understands this is a national security emergency hiding in plain sight, and when America stops building, America loses its grip on winning. . . .

> Oklahoma [] has a history of stepping up and raising our hand to serve our country and protect our independence. This project in Inola is about getting back. It's about making sure that the equipment that protects our troops and defends our borders is made in America by Americans for Americans. We did it before, and we're going to do it again.

Against this backdrop, Defendants ask the Court to dismiss this action for failure to state a claim as to both the anticipatory nuisance and threatened pollution claims. Alternatively, Defendants ask the Court to dismiss, or at a minimum stay, this action pending completion of the federal regulatory process administered by DEQ under its Clean Air Act delegation.

## II. APPLICABLE LEGAL STANDARDS

### A. Rule 12(b)(6): Failure to State a Claim

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must be dismissed if it fails to state a claim upon which relief can be granted. To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

4

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In evaluating a motion to dismiss, the Court must accept well-pleaded factual allegations as true but need not accept "mere conclusory statements" or legal conclusions couched as factual allegations. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Where the well-pleaded facts "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'— 'that the pleader is entitled to relief.'" Id. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## III.    <u>ARGUMENT</u>

### A.  The AG Fails to Allege Facts Sufficient to State an Anticipatory Nuisance Claim.

The AG seeks to enjoin construction of the proposed aluminum facility under Count I. Pet. ¶ 37. As the AG himself recognizes, "a nuisance consists of ***unlawfully*** doing an act" that "annoys, injures, or endangers the comfort, repose, health, or safety of others." Pet. ¶ 35 (citing 50 O.S. § 1). Under Oklahoma law, the "unlawfully" element requires identification of a specific statutory violation or unlawful act – not merely predicted harm from otherwise lawful conduct. To prevail on an anticipatory public nuisance claim, the predicted injury must be "irreparable—not compensable in money damages—and the evidence must be clear and convincing that there is a reasonable probability of injury, not just a mere apprehension." *Walker v. Kingfisher Wind, LLC*, No. CIV-14-914-D, 2016 WL 5947307, at *7 (W.D. Okla. Oct. 13, 2016). The complained-of injury "must not be nominal, theoretical or speculative," *id.*, and "[a] mere fear or apprehension of injury is insufficient," *Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1023 (10th Cir. 2007). The AG's claim fails for three independent reasons: (1) it is not predicated on an unlawful act; (2) it fails to establish a reasonable probability of injury; and (3) it fails to allege irreparable harm.

**1. The Anticipatory Public Nuisance claim is not based upon an unlawful act.**

"For an act or omission to be a nuisance in Oklahoma, it must be unlawful." *Nuncio v. Rock Knoll Townhome Village, Inc.*, 389 P.3d 370, 374 (Okla. Civ. App. 2016). The AG fails to allege any federal statute or regulation that, if violated, could serve as a basis for a nuisance claim under 50 O.S. § 1. The Petition alleges only that a facility operating in compliance with its permits might cause harm – which is precisely the scenario the permitting process is designed to address and prevent. Indeed, the AG acknowledges that the act it seeks to enjoin is *lawful*—one that would occur only as a result of Defendants having obtained a federally-required air-quality permit from DEQ under its Clean Air Act delegation. Pet. ¶ 19 ("According to the project's pending air-quality permit application, the smelter would be ***authorized*** to emit . . . .") (emphasis added). Where, as here, the federal regulatory scheme specifically authorizes the conduct at issue, state nuisance law cannot render that conduct "unlawful." *See Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 494 (1987) (state law is preempted "if it interferes with the methods by which the federal statute was designed to reach [its] goal").

Oklahoma courts—both federal and state—have uniformly required nuisance claims under 50 O.S. § 1 to be predicated on an ***unlawful*** act. *See, e.g.*, *Nuncio*, 389 P.3d at 375 (affirming dismissal for failure to state a claim upon finding that the statute which Nuncio claimed violated 50 O.S. § 1 "expressly limits its application to smoking tobacco in any indoor place used by or open to the public" and accordingly, "the possession of lighted tobacco in [defendants'] home is not a public or private nuisance and is not unlawful."); *Ins. Co. of North America v. Sheinbein*, 488 P.2d 1273 (Okl.1973) (rejecting claim that a fire was a nuisance because "the escape of fire was not unlawful under this Section [Section 1395 of 21 O.S. 1961]"); *Abraham v. Trail Lanes, Inc.*, 2014 OK CIV APP 107, 352 P.3d 1256 (Div. 1 2014) ("Abraham has not shown Trail Lines acted unlawfully. . .Accordingly, Abraham's nuisance claim fails as a matter of law."); *cf. Cherokee*

6

*Nation v. McKesson Corp.*, 529 F. Supp. 3d 1225, 1241 (E.D. Okla. 2021) (concluding that allegations that the Controlled Substance Act was violated "satisfy the requirement that a nuisance claim be based on either an unlawful act or failure to perform a legal duty").

The AG cannot, as a matter of law, state a claim under 50 O.S. § 1 where it fails to plead any unlawful act. This is particularly true where the Petition pleads that any alleged harm would result from *federally authorized* conduct. *See Thomas v. Farley*, 31 F.3d 557, 558-59 (7th Cir. 1994) ("[I]f a plaintiff does plead particulars, and they show that he has no claim, then he is out of luck—he has pleaded himself out of court."). The Legislature defined nuisance in terms of unlawful conduct. Because the Petition affirmatively alleges that Defendants seek authorization through the federal Clean Air Act permitting process administered by DEQ, the nuisance claim fails at its threshold element. To hold otherwise would allow state common law to circumvent the comprehensive federal regulatory framework Congress established—precisely what *Ouellette* forbids. The AG's claim should be dismissed on this ground alone. But the claim also fails for two additional, independent reasons.

**2. The AG fails to sufficiently allege reasonable probability of any injury.**

As the Petition acknowledges, Defendants have sought but not yet obtained an air quality construction permit pursuant to DEQ's federally-delegated Clean Air Act authority. *See* Pet. ¶ 19 ("According to the project's pending air-quality permit application, the smelter would be authorized to emit on the order of 425 tons of hydrogen fluoride per year . . . ."). Issuance of the air-quality permit is a condition to commence construction. *See* Pet. ¶ 31 ("The venture has already applied to the Oklahoma Department of Environmental Quality for an air-quality permit for the construction phase of the project.").[6]

---

[6]  DEQ's Air Quality Division operates a dual permitting system-construction permits and operating permits-to regulate major and minor sources of air pollution. A construction

Without the construction permit, no emissions of any alleged pollutant can occur. The Petition therefore cannot plausibly show that actual emissions are "reasonably probable." *See Twombly*, 550 U.S. at 570 (requiring "factual content" allowing the court to infer liability). Moreover, before any emissions could occur, ***all*** required permits—the air quality permit pending before DEQ, the related air quality operating permit, the pre-treatment wastewater permit or, as applicable, a Resource Conservation and Recovery Act ("RCRA") waste generation permit—must be obtained. Only then could any air emissions, wastewater pretreatment effluent or solid waste material be generated at the facility or could any reasonable probability of pollution conceivably follow.

The Petition assumes that future emissions will occur at levels sufficient to create a nuisance, yet it simultaneously acknowledges that DEQ under federally-delegated authority is currently evaluating whether and under what conditions the project may operate. The existence of that ongoing review, which is precisely evaluating the very issues identified by the AG, undermines any allegation that future harm is presently reasonably probable rather than merely speculative. In fact, the regulatory evaluation and permitting process exists to ensure that future operation of the facility will not create a nuisance condition of any kind. This is one of the purposes of the regulatory process.

The federal regulatory process administered by DEQ includes opportunities for review and comment, and the State of Oklahoma (the "State") may participate to address its concerns. The permit application is available on the DEQ website and at the Inola Public Library. When DEQ

---

permit application is required before a new source is constructed or an existing source is modified. An operating permit is issued after construction is completed and demonstration is made that the source can meet applicable emissions limitations. *See* <https://oklahoma.gov/deq/permits/air-permits.html>.

completes its technical review under federal Clean Air Act standards, either a draft permit or a draft denial will follow. If a draft permit issues, a public comment period will follow. The State may submit written comments on any aspect of the draft permit, and its concerns will be addressed prior to issuance of a final permit.[7] If the State submits comments, it may appeal any terms by which it remains aggrieved.

The AG seeks to bypass the established federal permitting process by enjoining construction of a facility still in the early stages of the air quality construction permit application review process. No operating permit has been issued or applied for. No final facility design has been approved. No air-dispersion modeling, emissions-control specifications, or environmental-impact assessments have been completed through the regulatory process. The AG's allegations amount to speculation that a facility that has not been designed, permitted, or constructed *might* emit pollutants at levels that *might* cause harm. Such "mere conclusory statements" that allow the Court to infer only "a mere possibility of [mis]conduct" are insufficient to allege a reasonable probability of harm. *Iqbal*, 556 U.S. at 678–79.

The AG's reliance on Century's alleged historical violations at other facilities also does not establish reasonable probability. The Petition acknowledges that the Inola facility would use "newer technology" and "early-detection systems." Pet. ¶ 29. Past alleged incidents at different facilities, using different technology, under different operating conditions, cannot substitute for plausible allegations that this facility will cause harm. Moreover, the very purpose of the pending DEQ review is to evaluate whether the proposed facility's emissions controls are adequate—the technical determination the AG asks this Court to prejudge.

---

[7] *See* <https://oklahoma.gov/deq/permits/air-permits/aqd-construction-permit-proposed-aluminum-smelter.html>.

### 3. The AG cannot plead irreparable harm as a matter of law.

The Petition fails to plausibly allege irreparable harm—an essential element of anticipatory public nuisance. *See Kingfisher Wind*, 2016 WL 5947307, at *7. Irreparable harm is absent as a matter of law when money damages suffice as a remedy. *See Paradise Distribs., Inc. v. Evansville Brewing Co.*, 906 F. Supp. 619, 622 (N.D. Okla. 1995) ("If the injury complained of may be compensated by an award of monetary damages, then an adequate remedy at law exists and *no irreparable harm may be found as a matter of law*." (emphasis in original)). As noted above, the federal regulatory process is specifically designed to prevent any harm to local property owners from occurring. But even assuming, contrary to fact, that some cognizable harm were ever to occur, the AG's own pleading establishes that monetary damages would be adequate: it alleges that Century "paid more than $940,000 to settle the claims of 719 nearby property owners" in South Carolina, Pet. ¶ 27, and the only interest the AG asserts in this case is economic harm to agriculture, *id.* ¶ 23. The very theory of harm the AG advances is compensable in money damages.

The AG's allegations also ignore regulatory realities. Were any future emissions ever to exceed permitted levels—which the federal regulatory framework is designed to prevent—DEQ possesses delegated authority to impose fines and penalties. *See* 27A O.S. § 2-3-502. Civil actions could be commenced at that time if warranted. The AG's own pleading acknowledges that civil penalties may result from emissions violations—underscoring that even under the AG's own theory, a monetary remedy exists. Pet. ¶ 28.

In short, the AG has pleaded itself out of its anticipatory public nuisance claim. Even accepting the AG's allegations at face value, they establish that any conceivable harm would be compensable through monetary damages, and the Court must therefore dismiss this claim because no irreparable harm is alleged and none may be found as a matter of law. *See Paradise Distribs.*, 906 F. Supp. at 622. Absent a viable underlying claim, injunctive relief is unavailable. *See McClain*

10

*Grp., LLC v. Hicks*, No. 23-cv-507-JDR-JFJ, 2025 WL 2797933, at *6 (N.D. Okla. Sept. 29, 2025) ("Because the Court has dismissed all of Plaintiffs' substantive claims, their claim for injunctive relief must be dismissed as well.").

**B. The AG Fails to Sufficiently State a Threatened Pollution Claim.**

Count II asserts a threatened pollution claim under the Oklahoma Environmental Quality Code, which makes it unlawful to "cause pollution" of State waters or to "place or cause to be placed any wastes in a location where they are likely to cause pollution of any air, land, or waters of the state." 27A O.S. § 2-6-105(A). The statute requires either (1) actual pollution of waters, or (2) placing wastes where pollution is "likely" to occur. The AG alleges neither. For the reasons stated above, *see supra* Section III.A.2, it fails to sufficiently allege that Defendants will place wastes "likely" to cause pollution.

Moreover, the injunctive relief the AG seeks—restraining Defendants from proceeding with construction—is unavailable where money damages are an adequate remedy. *See supra* Section III.A.3.

**C. The AG Lacks Authority to Use Anticipatory Litigation to Displace DEQ's Federally-Delegated Regulatory Authority.**

Before reaching the merits of the AG's anticipatory nuisance and threatened-pollution theories, the Court must confront a threshold question: whether the AG possesses lawful authority to initiate this action when doing so would displace DEQ's ongoing regulatory process. The Petition alleges that "[t]he Attorney General is the chief law officer of the State and is authorized to bring this action to protect the public health, safety, and welfare and to abate public nuisances affecting the people of the State." Pet. ¶ 4. But that allegation assumes the very authority Defendants contest. Oklahoma law does not treat the AG's power to invoke the State's name as

unlimited or authorize him to supplant other state agencies' regulatory authority.[8]  Oklahoma's

constitutional and statutory scheme, as well as recent Oklahoma Supreme Court precedent all

demonstrate that the AG lacks authority to maintain this suit and the Petition should be dismissed.

**1. The AG's Petition Infringes Separation of Powers and Impermissibly Conflicts with DEQ's Statutory Authority.**

The AG's apparent authority for this suit is 74 O.S. § 18b(A)(3), which authorizes the AG

"[t]o initiate or appear in any action in which the interests of the state or the people of the state are

at issue." *See* Pet. ¶ 4. But that general grant cannot permit the AG to usurp federally-delegated

regulatory functions Oklahoma law assigns to DEQ. Where the Legislature has entrusted

environmental permitting, emissions review, and pollution-control determinations to DEQ, §

18b(A)(3) must be construed consistently with—not as overriding—that specific statutory scheme.

The Oklahoma Supreme Court's decision in *Cherokee Nation v. United States Dep't of the

Interior*, 2025 OK 4, 564 P.3d 58, while arising in a different context, confirms that § 18b(A)(3)

is not unlimited. In *Cherokee Nation*, the Court rejected the AG's claim that he could "take and

assume control" of litigation in which the Governor was a named defendant. The AG argued that

74 O.S. § 18b(A)(3)—the same general litigation-authority provision on which he likely relies

here—authorized him to "take and assume control" of the State's interests. The Oklahoma

Supreme Court rejected that expansive construction. Although the AG possesses "extensive

authority to represent the State," the Court held that he "does not possess 'complete dominion'

over all litigation involving the State or state offices." *Cherokee Nation*, 2025 OK 4, ¶ 32.

Critically, the Court emphasized that statutes must be construed as a harmonious whole, and that

---

[8] The AG does not bring th*is lawsuit as* parens patriae, likely because it cannot meet the requirements of proving a "quasi-sovereign" interest—an interest "apart from the interests of particular private parties" involving harm to "a sufficiently substantial segment of its population." *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 607 (1982).

where a general grant of authority conflicts with a more specific assignment of government responsibility, the specific provision controls, such that the general grant cannot be read to swallow the specific. *Id*. ¶¶ 31-34. The Court further explained that it did "not . . . read the Attorney General's statutory authority to extend so broadly." *Id.*

That principle applies here. Oklahoma law assigns its federally-delegated responsibility for environmental permitting, emissions review, technical modeling, and pollution-control requirements to DEQ. *See* 27A O.S. § 2-5-105 (DEQ's Clean Air Act authority); *id.* § 2-6-103 (DEQ's water quality authority); 17 O.S. § 52(A)(8) & 52 O.S. § 139(A)(8) (DEQ's "sole environmental jurisdiction" over air emissions from Title V facilities). Defendants' permit application is undergoing DEQ review. Construing § 18b(A)(3) to authorize anticipatory nuisance litigation that would decide the same technical and regulatory questions pending before DEQ would read the AG's general authority as displacing the specific regulatory framework Oklahoma law establishes.

If § 18b(A)(3) authorized the AG to bypass administrative permitting through anticipatory nuisance litigation whenever he disagrees with a pending application, the regulatory framework governing air quality and environmental review would be rendered meaningless. The AG could file suit to enjoin any project before completion of permitting—substituting his preferences for the technical expertise the Legislature entrusted to DEQ. That cannot be the law.

Accordingly, the AG's authority presents a threshold defect supporting dismissal. He cannot rely upon a general litigation statute to obtain judicial resolution of technical environmental questions that Oklahoma law commits to DEQ's expertise. At minimum, this uncertainty reinforces why the Court should stay this action pending completion of DEQ's permitting process.

13

**2. The AG lacks statutory authority to sue, and this defect is jurisdictional warranting dismissal.**

The AG's authority to maintain this action presents a threshold legal question: absent lawful authority, he cannot invoke the State's judicial power at all. But Oklahoma law has never recognized a general, unilateral power in the AG to initiate trial-level litigation simply because he believes State interests are at stake. The AG's litigation authority derives from statute, not from any inherent constitutional power.

The Oklahoma Constitution assigns the AG only limited express responsibilities and does not confer general authority to initiate civil actions on behalf of the State. As the Oklahoma Supreme Court observed in *State ex rel. Cartwright v. Georgia Pacific Corp.*, the Constitution speaks only with "paucity" regarding the AG's duties, leaving the scope of the office's authority to legislative prescription. 1982 OK 148, ¶ 6, 663 P.2d 718, 720. Absent statutory authorization, the AG lacks power to sue.

The Oklahoma Supreme Court addressed this issue squarely in *State ex rel. Haskell v. Huston*, 1908 OK 157, 97 P. 982, holding that the AG was "without authority of law to bring the suit" and dismissing the action as a threshold defect. Decades later, in *Cartwright*, the Court reaffirmed that the AG's litigation authority is statutory and upheld the *Haskell* rule requiring gubernatorial authorization. *Cartwright* is especially pertinent here because it involved an environmental action brought by the AG against industrial defendants alleged to have caused damage to Oklahoma's natural resources—the same theory advanced in this case.

The AG cannot simply assume the existence of authority. The Petition identifies no statute permitting the AG to bypass an ongoing DEQ permitting process through anticipatory nuisance litigation. At minimum, the AG must demonstrate such authority before invoking the State's name to obtain the extraordinary relief sought here.

**3. The Court should dismiss the Petition to avoid an expansive reading of Section 18b(A)(3) that raises serious constitutional concerns.**

The AG's current claim of unilateral authority depends upon the 1995 amendment to 74 O.S. § 18b(A)(3), enacted through Senate Bill 233, which expanded the AG's authority to "initiate" actions involving the interests of the State or its citizens. Section 12 of Senate Bill 233 added language authorizing the AG "[t]o initiate or appear in any action in which the interests of the state or the people of the state are at issue."

Substantial questions exist regarding whether that amendment complies with Article V, § 57 of the Oklahoma Constitution. Senate Bill 233 principally concerned Corporation Commission operations, oil-and-gas regulation, taxation, personnel matters, and related regulatory subjects. Yet Section 12 fundamentally altered the AG's authority to initiate litigation on behalf of the State. Section 12 appears largely unrelated to the Corporation Commission-centered subject matter addressed elsewhere in Senate Bill 233, raising a substantial question whether the amendment complies with Oklahoma's single-subject requirement.

The Court need not resolve that constitutional question, however, to grant relief. Courts ordinarily avoid interpretations that create serious constitutional concerns when a narrower construction is available. Here, a narrower construction is not only available but compelled by *Cherokee Nation*. Rather than reading § 18b(A)(3) expansively, the Oklahoma Supreme Court emphasized that the AG's authority remains subject to constitutional and statutory limitations and cautioned against interpretations that create "obvious separation-of-powers concerns." *Cherokee Nation* therefore supplies a narrower interpretation of § 18b(A)(3) that avoids both the constitutional concerns associated with Senate Bill 233 and the structural concerns presented by this litigation.

15

Accordingly, even if the Court declines to reach the constitutionality of Senate Bill 233, it should reject the AG's expansive interpretation of § 18b(A)(3). A narrower construction avoids both the constitutional concerns associated with the 1995 amendment and the separation-of-powers concerns identified in *Cherokee Nation*. Under either approach, the AG has failed to establish authority for the extraordinary relief sought in this action.

These same concerns—uncertain Attorney General authority, an ongoing DEQ permitting process, and the risk of disrupting Oklahoma's administrative framework—also support dismissal or a stay under the doctrine of Primary Jurisdiction.

**D. Alternatively, the Court Should Dismiss or Stay This Action Pursuant to the Doctrine of Primary Jurisdiction Pending Completion of the Federal Regulatory Process.**

**1. DEQ administers the federal Clean Air Act permitting program under delegated authority from EPA.**

DEQ administers Clean Air Act permitting in Oklahoma under authority delegated by the United States Environmental Protection Agency ("EPA"). This federally-delegated program implements the comprehensive regulatory framework Congress established in the Clean Air Act. *See* 17 O.S. § 52(A)(8) & 52 O.S. § 139(A)(8) (noting that DEQ "shall have sole environmental jurisdiction to regulate air emissions from all facilities and sources subject to operating permit requirements" under Title V of the federal Clean Air Act as amended.); 27A O.S. § 2-3-101(B)(2) (explaining that DEQ has the "power and duty" to "cooperate with federal agencies for point source pollution, solid waste, hazardous materials, pollution, Superfund, water quality, hazardous waste, radioactive waste, air quality, drinking water supplies, wastewater treatment and any other program authorized by law or executive order"); *id.* § 2-3-101(E) (expressly establishing within DEQ both (1) an "air quality program" and (2) water programs "which shall be responsible for water quality, including, but not limited to point source and nonpoint source pollution within the

16

jurisdiction of the Department, public and private water supplies, public and private wastewater treatment, water protection and discharges to waters of the state"); *id.* § 2-5-105 (establishing the authority of DEQ with respect to Oklahoma's Clean Air Act); *id.* § 2-6-103 (establishing the authority of DEQ with respect to water quality).

Through this delegation, DEQ implements the federal Clean Air Act's permit program for Oklahoma. The EPA has authorized DEQ, through its Air Quality Division, to implement and enforce most of the federal Clean Air Act programs under state statutes and rules that incorporate federal standards. The permitting process DEQ administers thus applies federally-established requirements—including BACT analysis, NAAQS compliance, and Class I area protections—to individual permit applications.

### 2. The doctrine of primary jurisdiction warrants deference to the pending federal regulatory process administered by DEQ.

If the Court declines to dismiss for failure to state a claim, the Court should dismiss pursuant to the doctrine of primary jurisdiction, or at minimum stay the case until the federal regulatory process administered by DEQ is complete, allowing the agency to address issues within its specialized expertise in applying federal Clean Air Act standards.

The Tenth Circuit has explained that courts invoke primary jurisdiction "in situations where the courts have jurisdiction over the claim from the very outset but . . . the case will require resolution of issues which, under a regulatory scheme, have been placed in the hands of an administrative body," such that "the courts will refrain from entertaining the case until the agency has fulfilled its statutory obligation" and "the judicial process is suspended pending referral of the issues . . . for its views." *Marshall v. El Paso Nat. Gas Co.*, 874 F.2d 1373, 1376-77 (10th Cir. 1989) (citations omitted). In applying the doctrine, courts consider "whether the issues of fact raised in the case are not within the conventional experience of judges; or whether the issues of

17

fact require the exercise of administrative discretion or require uniformity and consistency in the regulation of the business entrusted to a particular agency." *Id*. at 1377.

Further, applying the doctrine of primary jurisdiction does not require the Court to relinquish or decline jurisdiction over this action. Rather, a court invoking primary jurisdiction "may retain jurisdiction over the proceedings by staying plaintiff's claims pending agency action." *Sierra Club v. Chesapeake Operating, LLC*, 248 F. Supp. 3d 1194, 1206 (W.D. Okla. 2017). Indeed, "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket." *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936). The Court thus retains full authority throughout and need only pause the proceedings while the agency completes the technical review that is already underway.

District courts within the Tenth Circuit have applied an expanded five-factor test to determine the propriety of agency deference in a given case: "(1) whether the court is being called upon to consider factual issues outside the conventional experience of judges; (2) whether defendant could be subject to conflicting orders; (3) whether agency proceedings have already begun; (4) whether the agency has shown diligence in resolving the issue; and (5) the type of relief requested." *McCormick v. Halliburton Co.*, No. CIV-11-1272-M, 2012 WL 1119493, at *2 (W.D. Okla. Apr. 3, 2012). Each factor supports a dismissal or stay.

***First***, the technical and scientific questions concerning air and water emissions—including application of federal BACT standards, National Ambient Air Quality Standards, and other federally-established requirements—are not within the conventional experience of judges. These determinations lie within the expertise of agencies with specialized knowledge of the federal Clean Air Act regulatory framework. Courts recognize that such "issues . . . are outside the conventional experience of judges and . . . fall within the special expertise of the ODEQ," and that "this Court's

involvement would likely cause further delay of the investigation of the Site and would result in substantial duplication of the efforts of the ODEQ." *Id.* **Second**, allowing this action to proceed risks subjecting Defendants to conflicting obligations—one set by the federal regulatory framework administered by DEQ, another by judicial decree. Courts have stayed proceedings where not doing so "could result in conflicting orders regarding the remediation and disrupt the plan the State has in place." *Stratford Holding, LLC v. Foot Locker Retail Inc.*, No. CIV-12-0772-HE, 2013 WL 5550461, at *6 (W.D. Okla. Oct. 8, 2013); *see also McCormick*, 2012 WL 1119493, at *2. **Third**, the federal regulatory permitting proceedings are already underway—Defendants' construction permit application has been pending before DEQ since before this action was filed. "It is axiomatic that the advisability of invoking primary jurisdiction is greatest where the issue is already before the agency." *Davies v. Nat'l Co-op. Refinery Ass'n*, 963 F. Supp. 990, 997 (D. Kan. 1997). **Fourth**, nothing in the Petition suggests DEQ has been anything but diligent in its review of the application under federal standards. *Cf. Marshall*, 874 F.2d at 1384 (declining to stay where the argument "relies on speculation the Commission may act at some future time"). **Finally**, the AG seeks only injunctive relief, and primary jurisdiction "will often be invoked when a plaintiff seeks injunctive relief, because there is the greatest likelihood that a court's order will interfere with administrative agency's proceedings." *McCormick*, 2012 WL 1119493, at *2.

For these reasons—and because no emissions presently exist that could warrant judicial intervention—Defendants ask the Court to dismiss this action or, at minimum, stay proceedings pending completion of DEQ's review under its federally-delegated Clean Air Act authority.

## IV.  <u>RELIEF REQUESTED</u>

Because the AG has failed to state a plausible claim for either anticipatory public nuisance or threatened pollution under the Oklahoma Environmental Quality Code, Defendants ask the Court to dismiss these claims pursuant to Fed. R. Civ. P. 12(b)(6) and dismiss the request for injunctive relief as unsupported by any actionable claim. In the alternative, Defendants ask the Court to dismiss or stay this action pursuant to the doctrine of primary jurisdiction, as DEQ is reviewing the permit application under federally-delegated Clean Air Act authority, and there is no reason to disrupt that federal regulatory process.

Respectfully submitted,

/s/ *Kayci Bair Hughes*
J. Christopher Davis, OBA #16639
Kayci Bair Hughes, OBA #18399
Bradley W. Welsh, OBA #18488

**CROWE DUNLEVY**
222 N. Detroit Ave., Suite 600
Tulsa, Oklahoma 74120
Telephone: (918) 592-9800
chris.davis@crowedunlevy.com
kayci.hughes@crowedunlevy.com
brad.welsh@crowedunlevy.com

-and-

Donald K. Shandy, OBA#11511
Timila Rother, OBA #14310
**CROWE DUNLEVY**
Braniff Building
324 N. Robinson Ave., Suite 100
Oklahoma City, Oklahoma 73102
Telephone: (405) 235-7700
don.shandy@crowedunlevy.com
timila.rother@crowedunlevy.com

**ATTORNEYS FOR DEFENDANTS**

## <u>CERTIFICATE OF SERVICE</u>

On the 28th day of July, 2026, Notice of the foregoing filing through the Court's electronic filing system was provided to the following counsel of record:

Gentner Drummond
Garry M. Gaskins, II
Jennifer L. Lewis

s/*Kayci Bair Hughes*
Kayci Bair Hughes

21