**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **STATE OF OKLAHOMA, ex rel. GENTNER DRUMMOND, in his official capacity as ATTORNEY GENERAL OF OKLAHOMA,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**CENTURY ALUMINUM COMPANY, a Delaware corporation; ALUMINUM OKLAHOMA, LLC d/b/a OKLAHOMA PRIMARY ALUMINUM LLC,**<br><br>**Defendants.** | **Case No. 26-CV-00450-SEH-SH** |

# OPINION AND ORDER

Before the Court is Plaintiff State of Oklahoma's ("State") motion to remand and for an award of costs and attorney's fees. [ECF No. 11]. The State brought Oklahoma claims in Rogers County District Court to enjoin Defendants Century Aluminum Company ("Century") and Aluminum Oklahoma, LLC d/b/a Oklahoma Primary Aluminum LLC ("OPA") from constructing and operating a primary aluminum smelter at the Tulsa Port of

Inola, in Rogers County, Oklahoma. [ECF No. 2-2].[1] Defendants removed the action to this court. [ECF No. 2]. For the reasons detailed below, the State's motion to remand [ECF No. 11] is granted in part and denied in part.

**I. Background**[2]

OPA is the "entity organized to develop, construct, and operate the Inola smelter," and has applied to the Oklahoma Department of Environmental Quality ("DEQ") for an air-quality permit. [ECF No. 2-2 at 2]. Century allegedly holds a 40% interest in the venture and operates or has operated primary aluminum smelters in Kentucky, South Carolina, and Iceland. [*Id.*]. Emerites Global Aluminum ("EGA") is a "state-owned enterprise of the United Arab Emirates" and allegedly holds a 60% interest. [*Id.*].

The State alleges that the "smelter would occupy roughly 350 acres along the Verdigris River, within approximately three miles of Inola's schools, homes, and farms." [ECF No. 2-2 at 4]. The smelter is projected to "draw more than 1,000 megawatts of continuous electricity" and, according to its pending air-quality permit application, be "authorized to emit on the order of

---

[1] In conformity with federal practice, the Court will refer to ECF No. 2-2 as the complaint. *See* Fed. R. Civ. P. 7(a)(1).

[2] When a court reviews a notice of removal for jurisdiction, it may consider the complaint as well as documents attached to the notice of removal. *See McPhail v. Deere & Co.*, 529 F.3d 947, 956 (10th Cir. 2008) (noting that other documentation can provide the basis for determining jurisdictional facts, besides the complaint). Therefore, the Court takes these facts from the complaint [ECF No. 2-2] and the other documents attached to the notice of removal [ECF No. 2].

425 tons of hydrogen fluoride per year[.]" [*Id*. at 5]. The State alleges that fluoride emitted from an aluminum smelter at the projected levels would harm the surrounding agricultural community—particularly, the land and cattle. [*Id*. at 5–8]. The State further alleges that Century's Kentucky and South Carolina smelters have violated air-pollution limits, leading to surrounding neighborhoods covered in "chemical dust" and local residents experiencing "headaches, bloody noses, and other ailments." [*Id*. at 8–9].

The State brings an Oklahoma claim of anticipatory public nuisance, under 50 O.S. §§ 1, 8, and an alternative claim of threatened pollution, under 27A O.S. § 2-6-105. [*Id*. at 10–11]. It specifically states that it "does not bring this action to litigate any question of federal law, and it pleads none." [*Id*. at 2].

In its notice of removal [ECF No. 2], Defendants assert federal question jurisdiction based on *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005) ("*Grable*"). [*Id*. at ¶¶ 8–10]. Specifically, Defendants assert the state-law causes of action raise "substantial and disputed questions of federal law …." [*Id*. at ¶ 9].

The State seeks remand under 28 U.S.C. § 1447(c), arguing that the Court lacks subject matter jurisdiction over its claims. [ECF No. 11]. It contends that only state-law claims are alleged in the complaint and federal claims have been expressly disclaimed. [*Id*. at 1–2]. The State further argues that

federal question jurisdiction does not exist because Defendants raise no more than a defense of federal preemption. [*Id.* at 3]. Further, the State seeks an award of attorney's fees and costs, contending that removal was objectively unreasonable, given the Tenth Circuit's decision in *Board of County Commissioners of Boulder County v. Suncor Energy (U.S.A.) Inc.*, 25 F.4th 1238 (10th Cir. 2022) ("*Suncor*"). [*Id.* at 2–3].

Defendants respond that jurisdiction exists under *Grable*, because the State's "claims for anticipatory injunctive relief cannot be resolved without determining the legal effect of the federal permitting framework administered under the Clean Air Act [("CAA")]." [ECF No. 20 at 6]. According to Defendants, federal permitting for the smelter involves a process administered by DEQ under the authority delegated by the Environmental Protection Agency ("EPA") pursuant to the CAA. [ECF No. 20 at 6]. They argue the State's claims "depend upon treating projected emissions contained in a pending permit application as legally operative evidence of unlawfulness, likely pollution, and imminent injury[,]" which "are precisely the determinations that Congress assigned to the EPA and DEQ through the federal permitting process." [*Id.*]. Last, Defendants argue *Suncor* does not foreclose a basis for removal because it involved damages arising from the sale of fossil fuel, as opposed to anticipatory injunctive relief aimed

to prevent construction and operation of a smelter currently undergoing the federal permitting process. [*Id*. at 6–7].

In reply, the State argues that the remedy it seeks is in line with *Suncor*'s underlying reasoning and that establishing federal jurisdiction under *Grable* requires proof of a federal issue. [ECF No. 23 at 3, 6]. Last, the State contends, absent remand, the federal-state balance would be disrupted, because "[a]ir pollution prevention and control at the source is 'the primary responsibility of States and local governments.'" [*Id*. at 9–10 (quoting 42 U.S.C. § 7401(a)(3)].

**II. Removal Standard**

Because federal courts are courts of limited jurisdiction, they must have a statutory basis for their jurisdiction. *Dutcher v. Matheson*, 733 F.3d 980, 984 (10th Cir. 2013). The federal removal statute permits removal from state court any civil action "of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). The removing party bears the burden of establishing federal jurisdiction by a preponderance of the evidence. *Dutcher*, 733 F.3d at 985. "If at any time … it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c).

When a defendant bases removal on federal question jurisdiction, under 28 U.S.C. § 1331, the "well-pleaded complaint rule" governs. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). The rule "provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Id.*; *see also* 28 U.S.C. § 1331 (federal district courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States"). The plaintiff "may avoid federal jurisdiction by exclusive reliance on state law[,]" and a case "may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint." *Id*. at 392–93 (emphasis in original); *see also Firstenberg v. City of Santa Fe, N.M.*, 696 F.3d 1018, 1023 (10th Cir. 2012) ("But neither anticipation by a plaintiff nor assertion by a defendant of a defense based on federal law—including a preemption defense—is enough to confer federal jurisdiction." (citations omitted)).

But the well-pleaded complaint rule has two exceptions: (1) complete preemption; and (2) a substantial, disputed federal-law issue necessarily embedded in state-law claims. *Devon Energy Production Co., L.P. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1203 (10th Cir. 2012). Here, Defendants state they "do not invoke complete preemption and do not contend that the CAA converts the [State's] state-law claims into federal

claims." [ECF No. 20 at 7 n.2]. However, they expressly invoke the second exception to the well-pleaded complaint rule by arguing that substantial federal-question jurisdiction exists under *Grable*. [*Id*.].

In *Grable*, the Supreme Court found that the substantial question doctrine "captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Grable*, 545 U.S. at 312. A party may establish substantial federal question jurisdiction by showing "a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Becker v. Ute Indian Tribe of the Uintah & Ouray Reservation*, 770 F.3d 944, 947 (10th Cir. 2014) (quoting *Gunn v. Minton*, 133 S. Ct. 1059, 1064 (2013)).

But "the substantial question branch of federal question jurisdiction is exceedingly narrow—a special and small category of cases." *Gilmore v. Weatherford*, 694 F.3d 1160, 1171 (10th Cir. 2012) (citation and internal quotation marks omitted). "[M]ere need to apply federal law in a state-law claim will [not] suffice to open the 'arising under' door" of jurisdiction. *Grable*, 545 U.S. at 313. Rather, "federal jurisdiction demands not only a contested federal issue, but a substantial one, indicating a serious federal interest in

claiming the advantages thought to be inherent in a federal forum." *Id.* (citations omitted).

## III. Analysis

### *A. Remand is appropriate because Defendants have failed to establish substantial federal question jurisdiction.*

#### *1. The State has not necessarily raised a federal issue.*

The State argues that it has not raised a federal issue because Oklahoma law supplies every element of its claims. [ECF No. 11 at 8]. It further contends that the issues Defendants intend to litigate are defenses based on preemption, which cannot form the basis for removal jurisdiction. [*Id*. at 7]. As to the complaint's reference to the regulatory program under which Defendant's operate, the State argues that it is not enough to convert state-law claims into federal ones. [*Id*. at 8].

Defendants submit that the state-law claims necessarily raise a federal issue because, for a court to assess the State's allegations of unlawfulness, it must address the "federal framework." [ECF No. 20 at 21]. Specifically, Defendants identify the federal question necessarily raised as: "whether federal law permits unevaluated emissions projections drawn from a pending PSD application to be treated as legally operative proof that a facility's anticipated emissions are 'unlawful' or will cause the harm the [State] alleges—before the federal permitting process has determined whether those

projected emissions are permissible at all." [*Id.* at 20]. Thus, Defendants argue the alleged unlawfulness of their conduct "necessarily depends on the approval and limitations set forth by the required permit—not on the inconsistent application of state nuisance law." [*Id.*].

"To determine whether an issue is 'necessarily' raised, the Supreme Court has focused on whether the issue is an 'essential element' of a plaintiff's claim." *Suncor*, 25 F.4th at 1266 (quoting *Gilmore*, 694 F.3d at 1173). Here, the State brings an anticipatory public nuisance claim and an alternative claim of threatened pollution. [ECF No. 2-2 at 10–11]. Oklahoma's nuisance statutes, 50 O.S. §§ 1, 2, codify the common law. *Nichols v. Mid-Continent Pipe Line Co.*, 933 P.2d 272, 276 (Okla. 1996). A nuisance under Oklahoma law includes "unlawfully doing an act, or omitting to perform a duty, which act or omission … [a]nnoys, injures or endangers the comfort, repose, health, or safety of others …." 50 O.S. § 1. "The Oklahoma Legislature has long defined public nuisance as a nuisance that contemporaneously affects an entire community or large group of people, but need not damage or annoy equally to all." *State ex rel. Att'y Gen. of Okla. v. Johnson & Johnson*, 499 P.3d 719, 724 (Okla. 2021) (citing 50 O.S. § 2).

As to the threatened pollution claim, it is unlawful under Oklahoma law "for any person to cause pollution of any water . . . or cause to be placed any wastes in a location where they are likely to cause pollution of any air, land

or waters of the state." 27A O.S. § 2-6-105. Pollution is defined as any substance, contaminant, or pollutant "which are or will likely create a nuisance or which render or will likely render the environment harmful or detrimental or injurious to public health." 27A O.S. § 2-1-102(12).

Neither state-law claim has as an element any aspect of federal law or regulations. The State does not allege that any federal regulation or decision is unlawful, nor does the State ask the Court to usurp a federal permitting decision. However, Defendants argue that a substantial federal question is necessarily raised because the alleged anticipatory nuisance claim would require the Court to determine "whether federal law permits unevaluated emissions projections drawn from a pending PSD application to be treated as legally operative proof". [ECF No. 20 at 20]. Defendants further submit that the Court "must necessarily determine" similar issues related to the same inquiry. [*Id*. at 23]. But all the issues Defendants submit are more akin to an ordinary preemption "defense" than to an "essential element" of the State's claims. This counsels against a finding of substantiality. *See Gilmore*, 694 F.3d at 1173 (explaining that the Supreme Court has "focused on whether the issue is an 'essential element' of a plaintiff's claim," rather than a defense).

Absent complete preemption, ordinary preemption is a defense that cannot provide the basis for removal jurisdiction. *Felix v. Lucent Technologies, Inc.*, 387 F.3d 1146, 1158; *accord Caterpillar Inc.*, 482 U.S. at 392–93 (a case "may

*not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption ….” (emphasis in original)). As Defendants concede, the CAA does not completely preempt state-law nuisance claims. *Suncor*, 25 F.4th at 1263–65. “The purpose of the [CAA] is to control and improve the nation’s air quality through a combination of state and federal regulation.” *Ariz. Pub. Serv. Co. v. EPA*, 562 F.3d 1116, 1118 (10th Cir. 2009) (emphasis added). Under the CAA, states retain their authority to “adopt and enforce” emissions standards and limitations to the extent they are more stringent than federal standards. *See* 42 U.S.C. § 7416 (“nothing in this chapter shall preclude or deny the right of any State or political subdivision thereof to adopt or enforce (1) any standard or limitation respecting emissions of air pollutants or (2) any requirement respecting control or abatement of air pollution; except” those “less stringent” than those implemented under federal plans.). And the CAA expressly preserves many state common law causes of action. *See* 42 U.S.C. § 7604(e) (“Nothing in this section ... shall be construed to prohibit, exclude, or restrict any State, local, or interstate authority from … bringing any enforcement action or obtaining any judicial remedy or sanction in any State or local court[.]”). To the extent Defendants believe ordinary preemption defeats the State’s claims on the merits, that is for the District Court of Rogers County to decide. State courts “have inherent authority, and are thus presumptively competent” to

adjudicate federal issues, "including federal defenses." *Suncor*, 25 F.4th at 1267 (quoting *Tafflin v. Levitt*, 493 U.S. 455, 458 (1990)).

Defendants have not established the first requirement—that a federal issue is necessarily raised by the State. Although this finding is enough for the Court to conclude that the case must be remanded for lack of subject matter jurisdiction, it will nonetheless continue the analysis under the factors laid out in *Grable*.

*2. No federal issue is actually in dispute.*

The State argues that no federal issue is disputed because the issues raised in the complaint are "quintessentially state-law and fact-bound," in that they require a determination of "whether a smelter … sited three miles from a town's schools and pastures … will constitute a nuisance under Oklahoma law." [ECF No. 11 at 8]. In response, Defendants argue that the actual dispute is whether the injunctive relief the State seeks "is consistent with the regulatory framework of the CAA." [ECF No. 20 at 25]. They contend the State's alleged entitlement to "interfere with the CAA's permitting process" is "directly disputed." [*Id.*]. This is essentially a preemption argument that can be raised in state court.

Although the complaint cites to and discusses the federal permitting system involving the CAA, the complaint does not implicate any "serious federal interests" that are best adjudicated in a federal forum. *Grable*, 545

U.S. at 313. This is not a direct challenge to any federal permit, as no federal permit has been issued. As discussed above, the CAA allows for a State to enforce its interest under 42 U.S.C. §§ 7416 and 7604(e). "[T]he mere fact that a federal regulation is involved does not mandate a finding of a substantial federal question." *Nadel and Gussman, LLC v. Reed Family Ranch, LLC*, 998 F.Supp.2d 1211, 1217 (N.D. Okla. Feb. 24, 2014).

Further, the precise question presented—whether Defendants should be enjoined from constructing and operating an aluminum smelter in Inola based on state law claims of anticipatory nuisance and threatened pollution—does not directly implicate any overriding federal interests of the CAA. Instead, answering this question impacts the outcome of what are essentially anticipated health, safety, and land-damage disputes between the State and Defendants in Rogers County. While the CAA permitting process may address many of the same issues that will be addressed in an anticipatory nuisance and threatened pollution claim, and may provide a valid defense to the State's claims, the State's claims rely upon and are based in state law.

*3. The state-law claims raise no substantial federal issue.*

The State argues that Defendants identify no substantial federal issue in the state-law claims. [ECF No. 11 at 9]. Defendants respond that the CAA preserves the State's regulatory authority to adopt more stringent emissions standards through its administrative process but does not permit state

judicial authority "to enjoin federally-supported projects through ad hoc common-law litigation before federal permitting is complete." [ECF No. 20 at 27]. Defendants submit that the "question in this action is not whether Oklahoma may impose more stringent substantive standards than those required by federal law. Rather, it is whether a court, through anticipatory nuisance litigation directed at a single source, may prohibit construction or prescribe source-specific operating conditions before completion of the PSD process established by Congress." [*Id.*]. Defendants maintain that the CAA does not answer this question and argues that its resolution "remains substantial to the operation of the federal permitting framework as a whole." [*Id.*]. The Court disagrees. This is again a preemption defense and not a substantial showing of federal question jurisdiction.

"To satisfy *Grable*'s 'substantial' prong, 'it is not enough that the federal issue be significant to the particular parties in the immediate suit.'" *Suncor*, 25 F.4th at 1268 (quoting *Gunn*, 568 U.S. at 260). Rather, the "substantiality inquiry under *Grable* looks instead to the importance of the issue to the federal system as a whole … [which] can be evaluated by assessing whether the federal issue would be controlling in numerous other cases." *Id.* (cleaned up). "In contrast, resolution of claims that are 'fact-bound and situation-specific' would not have this precedential effect and would be insufficiently

substantial." *Id.* (quoting *Empire Heathchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 700–01 (2006)).

Defendants argue that the national interest in preserving the Congressionally established permitting scheme is threatened in the absence of federal jurisdiction. [ECF No. 20 at 20–21]. However, the State's claims do not implicate the CAA's permitting scheme, nor do they involve any discrete legal question. Instead, the issues raised by the State's claims are necessarily "fact-bound and situation-specific," focusing on the projected emissions of the proposed Inola smelter and its anticipated impact on the surrounding area, which is a meaningful distinction under *Grable*. *See Empire Healthchoice Assurance*, 547 U.S. at 700–01 (distinguishing *Grable* by explaining that its dispute centered on actions of the IRS and its compatibility with a federal statute, while *Empire* involved a reimbursement claim triggered by the settlement of a personal-injury claim brought in state court). This case also does not involve a state-law claim that "is 'brought to enforce' a duty created by [a federal statute]," where "the claim's very success depends on giving effect to a federal requirement." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Manning*, 578 U.S. 374, 384 (2016). In fact, as Defendants point out, the State brings its case outside of and without regard to the permitting process mandated by federal law.

*4. The state-law claims are not capable of resolution in federal court without disrupting the federal-state balance approved by Congress.*

The State contends that removal is improper because its right "to adopt or enforce" its own requirements respecting control or abatement of air pollution by bringing claims "under any statute or common law" has been preserved by the CAA. [ECF No. 11 at 9 (citing 42 U.S.C. §§ 7416, 7604(e))]. Further, the State argues that Congress has declared "air pollution prevention ... and air pollution control at its source is the primary responsibility of States and local governments." [*Id*. (citing 42 U.S.C. § 7401(a)(3) (emphasis omitted)].

Defendants respond that the facts of this case fit into the "rare" category embraced by *Grable* jurisdiction. [ECF No. 20 at 28]. They claim this case "belongs in federal court" to protect the "role of EPA and DEQ" from being overridden by the State on emissions issues. [*Id*.]. Defendants identify "a critical issue of federal law" presented in this case to be "whether the CAA contemplates that courts can issue injunctive relief premised on state law thereby interrupting and supplanting the role of EPA and DEQ[.]" [*Id*.]. This is again an ordinary preemption defense—not a substantial question of federal jurisdiction.

"[T]he CAA is designed to provide a floor upon which state law can build, not a ceiling to stunt complementary state-law actions." *Suncor*, 25 F.4th at 1263. "Allowing any mismatch in the priorities evinced through state and

federal law to warrant removal, in the absence of a substantial federal issue necessarily raised in the complaint, would lead to a major diminution in the power of state courts to enforce their own laws." *Id.* at 1267. Defendants' concern that the State may hold them to a higher emissions standard than the federal permitting process "is simply a description of our federalist system, not a reason to override state sovereignty." *Id.*

The caselaw Defendants rely upon is also distinguishable. They cite *Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 494 (1987), *Am. Elec. Power Co. v. Connecticut*, 564 U.S. 410 (2011) ("*AEP*") and *North Carolina ex rel Cooper v. Tenn. Valley Auth.*, 615 F.3d 291 (4th Cir. 2010) to argue that injunctive relief should not be used to "interfere with the operation of the CAA, whether in the form of rulemaking (*AEP*) or the emissions guidance provided by the permitting process (*Cooper*)." [ECF No. 20 at 10–15]. Although these cases similarly analyzed claims under the CAA and other federal law, they involved different plaintiffs—private state citizens and/or neighboring states. And, in *AEP*, none of the parties who brought their claims in federal court "briefed preemption or otherwise addressed the availability of a claim under state nuisance law." *AEP*, 564 U.S. at 429. In contrast here, the State originated this action in state court to enforce its own emission standards within its own borders.

***B. The Court declines to award fees and costs.***

Plaintiffs seek an award of attorney's fees and costs. Under 28 U.S.C. § 1447(c), "[a]n order remanding the case *may* require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." (emphasis added). Awarding fees and costs is a matter of discretion. *GS Farms LLC v. Prolific Farms, LLC*, No. 21-CV-00502-GKF-SH, 2021 WL 9682123, at *2 (N.D. Okla. Dec. 23, 2021) (citing *Huffman v. Saul Holdings Ltd. P'ship*, 262 F.3d 1128, 1134 (10th Cir. 2001)). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).

Although *Suncor*'s reasoning provides much of the basis for this remand order, the *Suncor* plaintiffs sued for damages related to climate change and expressly did not seek to enjoin any of the defendant's operations. 25 F.4th at 1248. Also in contrast to the circumstances presented here, the plaintiffs in *Suncor* were municipalities (as opposed to the state) that alleged defendant energy companies' fossil fuel production contributed significantly to climate change. *Id.* at 1247. Because the circumstances presented in this case are different enough from those presented in *Suncor*, the Court does not find removal objectively unreasonable and declines to award fees or costs pursuant to 28 U.S.C. § 1447(c).

**IV. Conclusion**

The State's Motion to Remand [ECF No. 11] is GRANTED as to its request for remand but DENIED as to its request for attorney's fees and costs pursuant to 28 U.S.C. § 1447(c).

The Court expresses no view on the merits of the State's pending state law claims or on the federal preemption defense raised by Defendants.

The Court REMANDS this matter to the District Court of Rogers County, State of Oklahoma, and DIRECTS the Clerk of this Court to send a certified copy of this Order to the Clerk of the state court to which this matter is remanded.

DATED this 3rd day of September, 2026.

Sara Hill

Sara E. Hill
UNITED STATES DISTRICT JUDGE